**Annette Joy BILYEU, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–03–00151–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted March 29, 2004.

Decided April 29, 2004.

Douglas Wilder, Dallas, for appellant.

William Hill, Jr., Dallas County District Attorney, Tammy Ardolf, Assistant District Attorney, Dallas, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

Police officer Jeffery Alan Rose and his partner were taking a break on the parking lot of an Addison, Texas, convenience store around 2:00 a.m., June 20, 2002, when an unidentified man approached them. The man reported that he saw a woman asleep at the wheel of a gold Mercedes–Benz automobile stopped at a nearby traffic light—and the light was green. The man then noticed the same vehicle creeping past their location at ten miles per hour in a thirty-five-mile-per-hour zone and pointed it out. The officers followed the vehicle, noticing no traffic violations, and eventually stopped it, identified the driver as Annette Joy Bilyeu, determined she was intoxicated,[1] and arrested her. Bilyeu appeals from her jury conviction for driving while intoxicated (DWI),[2] challenging (1) the legality of the stop and, thus, the evidence obtained from that stop, and (2) the trial court's refusal to charge the jury regarding the legality of the search under Article 38.23 of the Texas Code of Criminal Procedure. We affirm.

*Legality of Search*

■ In reviewing a trial court's ruling on a motion to suppress, we give almost total deference to the trial court's determination of historical facts and review de novo any questions of law concerning the search and seizure. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App.2000). Thus, we will review de novo the question whether Rose had reasonable suspicion to stop Bilyeu. *See Guzman v. State,* 955 S.W.2d 85, 88–89 (Tex.Crim.App.1997). In the absence of explicit findings of fact, we view the evidence in the light most favorable to the trial court's ruling and sustain its decision if correct under any applicable theory of law. *See Maxwell v. State,* 73 S.W.3d 278, 281 (Tex.Crim.App.2002).

■ To justify an investigative detention, an officer must have reasonable suspicion of possible criminal conduct. *See Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Garza v. State,* 771 S.W.2d 549, 558 (Tex.Crim.App. 1989). Courts examine the totality of the circumstances to determine whether reasonable suspicion existed. *See Davis v. State,* 947 S.W.2d 240, 244 (Tex.Crim.App. 1997); *State v. Sailo,* 910 S.W.2d 184, 188 (Tex.App.-Fort Worth 1996, pet. ref'd). An officer must have specific articulable facts which, taken together with rational inferences and the officer's experience and general knowledge, reasonably indicated the detained person was preparing to engage or had engaged in a crime. *Davis,* 947 S.W.2d at 242.

■ Bilyeu contends the information given to Rose by the unidentified citizen is on the same footing as an anonymous tip,[3]

---

1. Bilyeu's intoxication is not an issue on appeal and was amply demonstrated in the evidence.

2. The trial court sentenced Bilyeu to 150 days' imprisonment, probated for twenty-four months, and a $1,200.00 fine.

3. We note the development of some debate regarding the analysis to be employed when dealing with an unidentified informant who appears in person to relay information to the police. *See State v. Fudge,* 42 S.W.3d 226, 230 (Tex.App.-Austin 2001, no pet.). The issue becomes whether to treat this type of tip like an anonymous tip, requiring a greater deal of corroboration to justify a stop based on the information.

that it is insufficient to form reasonable suspicion. Bilyeu correctly states that an anonymous tip cannot, by itself, become reliable enough to support a finding of reasonable suspicion. Here, however, the trial court found the citizen's personally appearing before the officers gave greater reliability to the information he provided them.

 Reasonable suspicion is dependent on both the content of the information possessed by the officer and the degree of reliability of the information. *See Davis v. State,* 989 S.W.2d 859, 863 (Tex.App.-Austin 1999, pet. ref'd). While an anonymous tip or telephone call may justify the initiation of an investigation, only rarely will a tip from an unnamed informant of undisclosed reliability, standing alone, establish the requisite level of reasonable suspicion to justify an investigative detention. *See Florida v. J.L.,* 529 U.S. 266, 269, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). There must be some further indicia of reliability, some additional facts from which a police officer may reasonably conclude that the tip is reliable and a detention is justified. *See id.*

A. *Accountability*

 The facts surrounding the unidentified citizen's report constitute some indicia of reliability. When an unnamed informant puts himself or herself in a position where he or she could easily be accountable, the tip becomes more reliable. *See Sailo,* 910 S.W.2d at 188. Particularly, unsolicited information given to police in a face-to-face manner should be given serious attention and great weight by the officer even though the informant did not identify himself or herself. *United States v. Sierra–Hernandez,* 581 F.2d 760, 763 (9th Cir.1978). Distinguishing the conversation in *Sierra–Hernandez* from an anonymous telephone call, the court pointed out that the informant confronted the officer directly and did so while the informant was driving a car. *Id.* Therefore, although the informant did not identify himself, his identity easily could have been determined from the license plates. *Id.* These distinctions would have allowed the officer to further question the informant had the officer deemed it necessary and also would have allowed officials to hold the informant accountable for the information he provided. *Id.*

In *Sailo,* an officer stopped and eventually arrested a driver for DWI after a citizen approached the officer with information regarding a possibly drunk driver. *Sailo,* 910 S.W.2d at 186. The citizen stated that a white Toyota pickup truck was "all over the road and had almost run into a ditch twice." *Id.* When the truck approached, the officer pulled the driver over. *Id.* The Fort Worth Court of Appeals concluded the face-to-face nature of the tip increased the reliability of the in-

The court in *Fudge* gives a great deal of weight to face-to-face encounters with unnamed informants, allowing the tip alone to justify an investigative detention. *Id.* at 230, 232. We do not give equal weight to these types of tips. Even a known informant's reliability is often analyzed by looking into the identity and past history of information. *See Carmouche v. State,* 10 S.W.3d 323, 328 n. 5 (Tex.Crim.App.2000) (citing *Adams v. Williams,* 407 U.S. 143, 146–47, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)). These elements are necessarily lacking when the infor-

mant is unnamed, despite the fact that the informant appeared in person before the police. Therefore, we will employ the traditional analysis and treat the tip in this case more like an anonymous tip. The fact that the encounter is face-to-face and that the informant, thus, puts himself or herself in a position of accountability does not change the analysis. Rather, we consider this a factor that lends itself to the reliability of the tip and to the determination of whether the totality of the circumstances supports a finding of reasonable suspicion.

formation and, thus, less corroboration was necessary to justify the investigative detention. *Id.* at 188. The experience of the officer and his knowledge that drunk drivers frequently travel through that area were sufficient corroboration of the highly reliable information. *See id.* at 189. Therefore, the totality of the circumstances justified the investigative detention that led to the driver's arrest and conviction. *Id.*

The court in *State v. Fudge,* 42 S.W.3d 226, 229 (Tex.App.-Austin 2001, no pet.), considered the trial court's suppression of evidence in a DWI prosecution. In *Fudge,* a cab driver approached a police officer stating that a white pickup truck was "all over the road" and that he thought the driver was drunk. *Id.* at 228. The cab driver then pointed out the truck as the driver drove it around a store parking lot. *Id.* The officer immediately pulled the truck over and subsequently arrested the driver for DWI. *Id.* The arresting officer testified he based the stop solely on the cab driver's tip. *Id.* at 229. The Austin Court of Appeals noted that the officer did not observe any independent acts on which to base the stop. *Id.* at 230. The record also failed to suggest any other facts to justify the stop. *Id.* at 232. Relying on *Sierra–Hernandez* and *Sailo,* the majority [4] concluded that the cab driver's giving unsolicited information in a face-to-face encounter made the information alone sufficiently reliable to justify the stop. *Id.*

▐ Here, we have circumstances similar to those present in *Sierra–Hernandez* and *Sailo.* The citizen approached the

officers. He provided them with unsolicited information regarding the car he observed four blocks away. Like the unidentified informants in *Sierra–Hernandez* and *Sailo,* the concerned citizen here approached the officers in his vehicle, which would have allowed the officers to identify him had they deemed it necessary. The citizen's providing this information directly to the officers, in person, makes the information significantly more reliable than a simple anonymous telephone call.

**B. *Corroboration***

▐ Further, corroboration by matters within an officer's knowledge and experience increases the reliability of the information and, ultimately, the justification of the detention. *See Sailo,* 910 S.W.2d at 189. Corroboration only of details that are easily obtainable at the time the tip is made will not furnish a basis for reasonable suspicion. *J.L.,* 529 U.S. at 271–72, 120 S.Ct. 1375; *Davis,* 989 S.W.2d at 864. The observations need not reveal criminal conduct; even innocent acts can give rise to reasonable suspicion under certain circumstances. *Woods v. State,* 970 S.W.2d 770, 773 (Tex.App.-Austin 1998). The officer must corroborate facts that would lead him or her to reasonably suspect that "some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime." *Davis,* 989 S.W.2d at 863.

For instance, in *Dowler v. State,* 44 S.W.3d 666, 670 (Tex.App.-Austin 2001,

---

4. The dissenting opinion pointed out that Texas courts have never allowed a vehicular stop based on an uncorroborated tip. *Fudge,* 42 S.W.3d at 238. Pointing to language in *Illinois v. Gates,* 462 U.S. 213, 242, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the dissent maintains the position that some level of corroboration is necessary even though the tip

may be more reliable by its face-to-face nature. *Id.* It distinguishes *Sierra–Hernandez* and *Sailo* in that each of those cases involved other facts in addition to the officer's knowledge that corroborated the information given in the face-to-face encounter. *Id.* at 242, 103 S.Ct. 2317.

pet. ref'd), after officers received an anonymous call reporting a suspected drunk driver, they observed the suspect drift within his lane of traffic, drive twenty miles per hour below the posted speed limit, and fail to respond to the patrol car's emergency lights. *Id.* Such conduct, although not criminal, was sufficient to lend reliability to the anonymous tip and to justify investigative detention of the driver on reasonable suspicion. *Id.*

Bilyeu relies on *Stewart v. State*, 22 S.W.3d 646, 648 (Tex.App.-Austin 2000, pet. ref'd), to support her contention that the anonymous tip is insufficient to support reasonable suspicion. Since officers did not observe her commit a traffic offense, she argues, there is no meaningful corroboration of the information provided by the citizen. She calls on this Court to treat the facts before us in a similar manner. In *Stewart,* according to an anonymous caller, the driver of a green Chevrolet Camaro apparently fell down a couple of times trying to get into his car and appeared to be highly intoxicated. *Id.* The officers found the suspect's car and followed it for a short time. *Id.* During that time, it is undisputed that the officers observed no erratic driving and no traffic offense. That being the case, the sole basis for the vehicular stop was the anonymous tip. *Id.*

■ The case before this Court is distinguishable. Here, Rose observed Bilyeu driving a vehicle matching the description just given by the informant. Additionally, Rose observed Bilyeu traveling at a speed of ten miles per hour in a thirty-five-mile-per-hour zone. She continued to drive at that speed despite the fact two police cars were following her, with no indication she noticed their presence. Further, when Rose engaged his emergency lights, Bilyeu initially increased her speed just before she pulled over. Also relevant to Rose's

suspicion is the fact that Bilyeu was operating her vehicle after 2:00 a.m. in Addison, an area well-known for its restaurants and bars, according to Rose's testimony. Even though Bilyeu may not have committed a traffic violation, her unusually low speed and her initial lack of reaction to the police, coupled with the circumstances and in light of Rose's experience, provide adequate corroboration of the information provided by the unidentified citizen. Such facts clearly were of such a nature as to indicate that Bilyeu was involved in "some activity out of the ordinary."

Bilyeu, apparently dismissing the citizen's report, also argues that observing someone driving well below the posted speed limit is insufficient to justify Rose's stop. She cites *Viveros v. State*, 828 S.W.2d 2, 4 (Tex.Crim.App.1992), and *Richardson v. State*, 39 S.W.3d 634, 639 (Tex.App.-Amarillo 2000, no pet.), which conclude the traffic stops involved were unjustified since the respective officers had no facts other than observation of slow driving to lead to reasonable suspicion. In *Viveros,* when the appellant reduced his speed to match the speed of the officers' patrol car, the officers were not justified in stopping him because his actions were insufficient to create a reasonable belief that such actions were related to a crime. *Viveros,* 828 S.W.2d at 4. Likewise, in *Richardson,* Department of Public Safety troopers stopped the appellant after they observed the appellant driving forty-five miles per hour in a sixty-five-mile-per-hour speed zone. *Richardson,* 39 S.W.3d at 639. The cocaine discovered in the subsequent consensual search should have been excluded since the troopers did not have reasonable suspicion to justify initially stopping Richardson. *Id.* Here, in contrast to the situations in *Viveros* and *Richardson,* Rose relied on his observation of Bilyeu's driving *and* on the report of her being asleep at the wheel at a green light. In *Viveros* and *Richardson,* there was no

information provided to officers that would have prompted investigation of those matters.

We hold that Rose, in light of the circumstances, confirmed sufficient facts which enabled him to reasonably conclude the information given to him was reliable, and a temporary detention was, therefore, justified. The evidence of Bilyeu's intoxication, obtained after the detention of the vehicle, was admissible. Accordingly, the trial court did not err in overruling Bilyeu's motion to suppress.

 Even if the stop was not supportable on the basis of a reasonable suspicion of a violation of law, the officers had sufficient information to validate the stop on the basis of the community caretaking function. As part of an officer's community caretaking function, he or she may stop to help someone that "a reasonable person, given the totality of the circumstances, would believe is in need of help." *Corbin v. State*, 85 S.W.3d 272, 276 (Tex.Crim. App.2002). An officer is not entitled to invoke the community caretaking function if he or she is primarily motivated by a different purpose, such as law enforcement. *Id.* at 277. Here, the record reflects that Rose was concerned Bilyeu may have been injured, tired, or intoxicated. The trial court, as the exclusive judge of credibility and the fact-finder, could have concluded Rose was primarily motivated by community caretaking concerns. *See id.* Once that is determined, we examine whether Rose's belief that Bilyeu needed help is reasonable by looking at the following four factors:

> (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance other than that offered by the officer; and (4) to what extent the individual, if not assisted, presented a danger to himself or others.

*Id.* After being told she had been asleep behind the wheel, stopped at a green light, and then seeing her driving for a time at ten miles per hour, fifteen less than the posted limit, apparently unaware of the officers following her until they activated the lights on the patrol car, officers were justified in believing there was a significant level of distress exhibited by Bilyeu. She was alone at 2:00 a.m., showing unusual behavior, and therefore might very well have been a danger to herself or others. There was ample evidence to support the stop on the basis of the community caretaking function, and the trial court in its role as fact-finder so found.

We overrule Bilyeu's first point of error.

*Jury Instruction*

 In her second point of error, Bilyeu complains the trial court committed harmful error when it refused to instruct the jury regarding the legality of the search under Article 38.23. *See* TEX.CODE CRIM PROC. ANN. art 38.23 (Vernon Supp. 2004). We disagree. Bilyeu was entitled to an instruction under Article 38.23 only if the evidence raised a factual issue regarding the legality of the detention. *Bell v. State*, 938 S.W.2d 35, 48 (Tex.Crim.App. 1996). Here, Bilyeu does not dispute any of the testimony as set out in the State's case. *See Hamilton v. State*, 831 S.W.2d 326, 331 (Tex.Crim.App.1992). Rather, she argues that those facts cannot justify the officer's stopping her. Her arguments give rise to questions of law, not of fact, and, therefore, the trial court was not required to instruct the jury under Article 38.23. We overrule Bilyeu's second, and remaining, point of error.

We affirm the judgment of the trial court.