Charles A. **MITCHELL**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 10–05–00050–CR.

Court of Appeals of Texas, Waco.

Jan. 18, 2006.

Rehearing Overruled Feb. 21, 2006.

---

Adam L. Seidel, Joseph L. Shearin, Dallas, for appellant.

Bill Moore, County Atty. for Johnson County, Cleburne, for appellee.

## OPINION

FELIPE REYNA, Justice.

Charles A. Mitchell pleaded *nolo contendere* to driving while intoxicated (second offense) after the court denied his suppres-

sion motion. Pursuant to a plea bargain, the court sentenced him to one year in jail, suspended imposition of sentence, and placed him on community supervision for two years. Mitchell contends in two points that the court abused its discretion by denying his suppression motion because: (1) the police officer who stopped his car did not have reasonable suspicion; and (2) this officer's observations and the stop both occurred outside the city limits and the officer had no authority to stop him outside the city limits. We will affirm.

## Background

The State called two witnesses at the suppression hearing, Venus Police Officer Bryan Fulbright and DPS Trooper Jim Gillman. Fulbright testified that an unidentified man pulled alongside his patrol car in a parking lot and told Fulbright "that a tan-colored, four-door sedan with an American flag in the back window had almost sideswiped him causing him—almost causing him to have an accident. He said that it appeared the driver was possibly intoxicated." The man told Fulbright that the tan sedan was driving on Highway 67.

Fulbright immediately headed toward Highway 67 to pursue this possibly intoxicated driver. He located what turned out to be Mitchell's car on Highway 67 approximately one-half to three-fourths of a mile outside the Venus city limits. Fulbright followed Mitchell for about one minute during which time he observed him weaving within his lane. Fulbright then turned on his overhead lights and stopped the car because he felt he had reasonable suspicion that the driver was intoxicated.

Trooper Gillman testified that he heard a dispatch regarding the suspected intoxicated driver. Gillman saw that Fulbright had pulled Mitchell over and stopped to assist. Gillman noticed that Fulbright was

outside the Venus city limits and essentially took over the investigation. After conducting field sobriety tests, Gillman arrested Mitchell for DWI.

The court made the following pertinent findings of fact and conclusions of law in connection with the denial of Mitchell's suppression motion.

Finding of Fact No. 1

Officer Fulbright, Venus Police Department, on the basis of a statement to him by an unidentified person that "there was possibly a drunk drier westbound on U.S. Highway 67" in a Toyota with an American flag sticker on the rear window, who had almost hit him, drove west on U.S. Highway 67, spotted such vehicle, followed it, observed it weaving within its own lane of traffic, had a reasonable suspicion the driver might be intoxicated and stopped the driver of the vehicle, outside and west of the city limits of Venus.

Conclusion of Law No. 1

Officer Fulbright, Venus Police Department, with reasonable suspicion to believe the Defendant was intoxicated under totality of circumstances [sic], had the authority to stop and arrest the Defendant (although in this case, there is no showing of formal arrest by him) outside his jurisdiction of Venus under the provisions of Art. 14.03(d) CCP.

## Stop Outside City Limits

■ Mitchell contends in his second point that the court abused its discretion by denying his suppression motion because Fulbright had no authority to stop him outside the city limits.

Two subdivisions of article 14.03 of the Code of Criminal Procedure potentially apply. Subdivision (d) provides:

A peace officer who is outside his jurisdiction may arrest, without warrant,

a person who commits an offense within the officer's presence or view, if the offense is a felony, a violation of Chapter 42 or 49, Penal Code, or a breach of the peace. A peace officer making an arrest under this subsection shall, as soon as practicable after making the arrest, notify a law enforcement agency having jurisdiction where the arrest was made. The law enforcement agency shall then take custody of the person committing the offense and take the person before a magistrate in compliance with Article 14.06 of this code.

TEX.CODE CRIM. PROC. ANN. art. 14.03(d) (Vernon Supp.2005).

The version of subdivision (g) applicable to this case provides:

A peace officer listed in Subdivision (1), (2), (3), (4), or (5), Article 2.12, who is licensed under Chapter 415, Government Code, and is outside of the officer's jurisdiction may arrest without a warrant a person who commits any offense within the officer's presence or view, except that an officer who is outside the officer's jurisdiction may arrest a person for a violation of Subtitle C, Title 7, Transportation Code, only if the officer is listed in Subdivision (4), Article 2.12. A peace officer making an arrest under this subsection shall as soon as practicable after making the arrest notify a law enforcement agency having jurisdiction where the arrest was made. The law enforcement agency shall then take custody of the person committing the offense and take the person before a magistrate in compliance with Article 14.06.

Act of May 10, 1999, 76th Leg., R.S., ch. 210, § 2, 1999 Tex. Gen. Laws 686, 686–87 (amended 2005) (current version at TEX. CODE CRIM. PROC. ANN. art. 14.03(g) (Vernon Supp.2005)).

■ An "arrest" under article 14.03 is not limited to a formal, custodial arrest.

*See State v. Kurtz,* 152 S.W.3d 72, 79–80 (Tex.Crim.App.2004); *see also Brother v. State,* 166 S.W.3d 255, 260 (Tex.Crim.App. 2005) (approving of *Terry* stop made by police officer outside of city limits). Thus, the provisions of article 14.03 apply when an officer makes a *Terry* stop. *Id.*

In *Brother,* the Court of Criminal Appeals held that under either article 14.03(d) or (g) a municipal police officer has the authority to stop a driver outside of the city limits if the officer has reasonable suspicion that the driver is driving while intoxicated. *See Brother,* 166 S.W.3d at 260.

Here, Fulbright testified that, based on the unidentified citizen's report and his own observations, he suspected Mitchell of driving while intoxicated. Thus, he was authorized to stop Mitchell under both subdivisions (d) and (g) of article 14.03, even though he was outside the Venus city limits. *Id.* Accordingly, we overrule Mitchell's second point.

**Reasonable Suspicion**

Mitchell contends in his first point that Fulbright did not have reasonable suspicion because Fulbright stopped him on the basis of uncorroborated information received from an unidentified citizen.

■ "We review the trial court's ruling for an abuse of discretion, giving 'almost total deference to a trial court's determination of historical facts.'" *Welch v. State,* 93 S.W.3d 50, 53 (Tex.Crim.App.2002) (quoting *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997)). When as here the underlying facts are undisputed and the court's findings do not turn on the credibility of a witness, we conduct a *de novo* review. *See Oles v. State,* 993 S.W.2d 103, 106 (Tex.Crim.App.1999); *Johnson v. State,* 146 S.W.3d 719, 721 (Tex.App.-Texarkana 2004, no pet.); *Davis v. State,* 74

S.W.3d 90, 95 (Tex.App.-Waco 2002, no pet.).

■ Because the citizen-informant's identity is unknown, the information he provided is treated as an anonymous tip. *See Bilyeu v. State*, 136 S.W.3d 691, 694–95 (Tex.App.-Texarkana 2004, no pet.); *State v. Fudge*, 42 S.W.3d 226, 230 (Tex. App.-Austin 2001, no pet.); *State v. Garcia*, 25 S.W.3d 908, 912–13 (Tex. App.-Houston [14th Dist.] 2000, no pet.).

"[A]n anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity inasmuch as ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations and given that the veracity of persons supplying anonymous tips is 'by hypothesis largely unknown, and unknowable.' " *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 2415, 110 L.Ed.2d 301 (1990) (quoting *Illinois v. Gates*, 462 U.S. 213, 237, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). "[H]owever, there are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.' " *Florida v. J.L.*, 529 U.S. 266, 270, 120 S.Ct. 1375, 1378, 146 L.Ed.2d 254 (2000) (quoting *White*, 496 U.S. at 327, 110 S.Ct. at 2414); *accord Pipkin v. State*, 114 S.W.3d 649, 654 (Tex.App.-Fort Worth 2003, no pet.); *Hawes v. State*, 125 S.W.3d 535, 538 (Tex. App.-Houston [1st Dist.] 2002, no pet.); *Garcia*, 25 S.W.3d at 913.

> Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture," *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.

*White*, 496 U.S. at 330, 110 S.Ct. at 2416; *accord Pipkin*, 114 S.W.3d at 654; *Fudge*, 42 S.W.3d at 229–30.

The Fort Worth Court has identified the following factors from federal decisions as important in evaluating the reliability of information received from an informant:

- whether the informant provides a detailed description of the wrongdoing;
- whether the informant observed the wrongdoing firsthand;
- whether the informant places himself in a position to be held accountable for the report;
- whether the informant is somehow connected with the police (*e.g.* a paid informant).

*Pipkin*, 114 S.W.3d at 655 (citing *Gates*, 462 U.S. at 234, 103 S.Ct. at 2330; *United States v. Sierra–Hernandez*, 581 F.2d 760, 763 (9th Cir.1978)) (other citations omitted); *accord Hawes*, 125 S.W.3d at 538–39; *Fudge*, 42 S.W.3d at 230–32.

Here, all four of these factors suggest that the unidentified citizen-informant's report "exhibits sufficient indicia of reliability." The informant provided a detailed description of Mitchell's car and the reckless manner in which Mitchell was driving. *See Pipkin*, 114 S.W.3d at 655; *Fudge*, 42 S.W.3d at 232. The informant personally observed the manner in which Mitchell drove the car. *See Pipkin*, 114 S.W.3d at 655. The record reflects no connection between the informant and the police. *See Pipkin*, 114 S.W.3d at 655; *Fudge*, 42 S.W.3d at 232. Perhaps most importantly, the informant placed himself in a position

to be easily identified by Fulbright and held accountable for his report. *See Bilyeu,* 136 S.W.3d at 696; *Fudge,* 42 S.W.3d at 232; *Garcia,* 25 S.W.3d at 913; *State v. Sailo,* 910 S.W.2d 184, 188 (Tex.App.-Fort Worth 1995, pet. ref'd).

■ Accordingly, the citizen-informant's report exhibits heightened indicia of reliability. Thus, the level of corroboration required under the totality of the circumstance to establish reasonable suspicion is lessened. *See White,* 496 U.S. at 330, 110 S.Ct. at 2416; *Pipkin,* 114 S.W.3d at 654; *Fudge,* 42 S.W.3d at 229–30.

> "[C]orroboration" in this sense does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is being, has been, or is about to be committed. Rather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is justified.

*Pipkin,* 114 S.W.3d at 654 (citing *Sailo,* 910 S.W.2d at 189); *see also White,* 496 U.S. at 330–32, 110 S.Ct. at 2416–17; *Bilyeu,* 136 S.W.3d at 696; *Garcia,* 25 S.W.3d at 913.

Observation of "easily obtained facts and conditions" (such as identifying information) will not generally provide the requisite corroboration. *See White,* 496 U.S. at 332, 110 S.Ct. at 2417; *Bilyeu,* 136 S.W.3d at 696. However, the officer need not personally witness criminal activity, for "even innocent acts can give rise to reasonable suspicion under certain circumstances." *Bilyeu,* 136 S.W.3d at 696; *accord Brother,* 166 S.W.3d at 258–59 ("argument that an officer must *personally* witness facts giving rise to criminal activity is against the great weight of authority").

Here, the citizen-informant reported to Fulbright "that a tan-colored, four-door sedan with an American flag in the back window had almost sideswiped him" and that the driver was "possibly intoxicated." Fulbright promptly located a car matching this description and observed the driver weaving within his lane of travel. He testified that he stopped the car because he suspected the driver may be intoxicated based on the citizen's report and his own observations.

In light of the heightened indicia of reliability arising from the circumstances of the unidentified citizen-informer's report, Fulbright's observations under the totality of the circumstances were sufficient to corroborate the report and provide reasonable suspicion to stop Mitchell's car. *See Bilyeu,* 136 S.W.3d at 697–98; *Fudge,* 42 S.W.3d at 232; *Garcia,* 25 S.W.3d at 913–14; *Sailo,* 910 S.W.2d at 189. Accordingly, we overrule Mitchell's first point.

We affirm the judgment.

Chief Justice GRAY joins no part of this opinion but concurs in affirming the trial court's judgment. *Brother v. State,* 166 S.W.3d 255 (Tex.Crim.App.2005).