Opinion issued December 20, 2007

 






In The

Court of Appeals

For The

First District of Texas






NO. 01-06-01023-CR






JESSE LEE ROBINSON, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 339th District Court

Harris County, Texas

Trial Court Cause No. 1053783





MEMORANDUM OPINION


 Appellant, Jessie Lee Robinson, pleaded not guilty to felony possession of a
firearm by a felon, see Tex. Pen. Code Ann. §§ 6.01(b), 46.04(a)(1) (Vernon 2003
& Supp. 2007), and not true to a prior felony conviction. A jury found appellant
guilty and the enhancement true and assessed punishment at 13 years in prison. 
Appellant proceeded to appeal without requesting a new trial. On appeal, appellant
challenges denial of his motion to suppress and his requested instruction that the jury
determine whether the shotgun recovered from his vehicle was in plain view. 
Appellant also contends that his trial counsel provided ineffective assistance. We
affirm. 

Background


 T. Cooper, a Houston Police Officer with ten years' experience as a patrol
officer, responded while on patrol to a service call by citizen resident. The report
concerned a male who had been displaying a shotgun in a neighborhood. Responding
to the call, Officer Cooper spoke with the citizen, an African-American female, as she
stood in a driveway outside a house that she identified as hers. The woman spoke to
Cooper about a person who had been pointing a shotgun at others in the
neighborhood. (1) The citizen described the individual as a male African-American
named "Jay" and indicated where he lived; she also described the car he was driving. 
Having grown up in the same neighborhood and having known appellant for over 20
years, Officer Cooper realized "immediately," from "the name and whereabouts"
provided by the woman, that "Jay" was appellant. The woman explained that she was
concerned because the individual she described had been in altercation with some of
her family members, someone in her family had recently been shot in the same
neighborhood, and she did not want anyone killed. 

 Very shortly after leaving the citizen--perhaps two to three minutes
later--Officer Cooper noticed a white vehicle that matched the description he had just
received. Cooper watched as the vehicle began to pull into a gas station that was
visible from where Cooper was positioned and then followed. As he drove into the
station, Officer Cooper was able to identify appellant as the driver. Cooper pulled his
patrol car behind appellant's car and activated his warning lights just as appellant
stopped his car at a pumping station. 

 Officer Cooper left his squad car and approached appellant's vehicle,
indicating to appellant that he should step out of the car. Cooper was in uniform, but
had not drawn his gun. His purpose in approaching appellant was to investigate the
woman's complaint. As Cooper got close to appellant's vehicle, and as appellant was
getting out of the vehicle, however, Cooper saw a black, pistol-grip shotgun in plain
view in the passenger-side area of the front seat of the vehicle. Cooper could see the
gun from where he was standing on the driver's side of the vehicle: the tip of the
barrel was on the floor, and the handle grip was against the seat. The gun was later
identified as a .12 gauge Winchester pump gun.

 Officer Cooper then returned to his patrol car with appellant and placed
appellant in the back seat while he called for backup support. Cooper stated that his
purpose was to secure appellant and to radio for backup to secure the shotgun.
Appellant was not handcuffed and was not arrested at that time. When Officer E.
LaCourt arrived at the scene, he secured the shotgun and used the computer in his
patrol car to investigate appellant's criminal history. LaCourt learned then that
appellant had a felony conviction within the previous five years. Officer LaCourt
arrested appellant at the scene for possession of a firearm by a convicted felon and
later prepared the offense report. Officer Cooper returned to the location to identify
the woman who had made the report, but he could not locate her at that time. 

 Appellant filed a motion to suppress in which he challenged the legality of his
arrest and detention and asked that the evidence seized be suppressed because of that
illegality. After conducting an evidentiary hearing at which Cooper and appellant
testified, the trial court denied appellant's motion to suppress. There are no findings
of fact and conclusions of law from the hearing on the motion to suppress.

Motion to Suppress


 In his first point of error, appellant challenges denial of his motion to suppress
the shotgun seized from his vehicle. Appellant contends that the officers seized the
shotgun without cause to believe that an offense had been committed, in violation of
the Texas Constitution, chapter 14 of the Code of Criminal Procedure, and the Fourth
Amendment of the United States Constitution. Appellant's motion to suppress filed
in the trial court stated the following, in its entirety: 

 [Appellant] was unlawfully detained and arrested by members of the
Houston Police Department. This detention and arrest without a warrant
were contrary to Article 1[,] Sec. 9 of the Texas Constitution and
Chapter 14 of the Code of Criminal Procedure[,] and the fruits of this
search should be suppressed pursuant to Article 38.23 of the Code of
Criminal Procedure.


At the conclusion of the hearing on the motion to suppress, appellant's trial counsel 
maintained an inconsistency existed among Officer Cooper's testimony, the offense
report and appellant's testimony, and that "there was no reasonable suspicion to
detain [appellant]." Appellant's motion to suppress focused on the "arrest and
detention" of appellant, which he claimed was illegal. The motion also included a
challenge to the seizure of the "fruits of this search." The hearing on the motion to
suppress narrowed appellant's seizure complaint by focusing solely on appellant's
detention, with trial counsel contending that Officer Cooper lacked reasonable
suspicion to detain. The focus of both the motion and the hearing in the trial court
was on alleged "seizure" of appellant, by either arrest or detention. On appeal,
appellant focuses on seizure of the shotgun. 

A. Error Preserved in Part

 Based on the different emphases among appellant's contentions on appeal, his
motion to suppress, and the hearing on that motion, the State contends that appellant
did not preserve error because he has raised a contention on appeal that was not raised
in the trial court. See Tex. R. App. P. 33.1(a). We agree in part. 

 Well-settled law recognizes that virtually every right, whether constitutional
or statutory, may be waived by failing to object. Smith v. State, 721 S.W.2d 844, 855
(Tex. Crim. App. 1986); Solis v. State, 945 S.W.2d 300, 301 (Tex. App.--Houston 
[1st Dist.] 1997, pet. ref'd). To preserve error for appellate review, an appellant must
object timely, with reasonable specificity, and obtain an adverse ruling. Tex. R. App.
P. 33.1(a); Turner v. State, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991); Steadman
v. State, 31 S.W.3d 738, 742 (Tex. App.-Houston [1st Dist.] 2000, pet. ref'd). An
appellant has not preserved error when the complaint on appeal does not comport
with the objection made to the trial court, Wilson v. State, 71 S.W.3d 346, 349 (Tex.
Crim. App. 2002), or expands beyond a ground presented to the trial court. See Swain
v. State, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005). Error is not preserved under
either alternative because the trial court had no opportunity to rule on the grounds
presented on appeal, as required by rule 33.1(a)(2). See Tex. R. App. P. 33.1(a)(2).

 Despite emphasizing the seizure of appellant, either by detention or arrest, the
expressly stated purpose of appellant's pretrial motion to suppress was to eliminate,
i.e., suppress, the seized shotgun. Had the trial court granted appellant's motion, the
shotgun would necessarily have been suppressed. We hold, therefore, that appellant
preserved his appellate challenge to the trial court's failure to grant the motion to
suppress. 

 We agree with the State, however, concerning appellant's reliance on Fourth
Amendment principles. Because appellant's motion to suppress did not assert any
federal constitutional claims, on which the trial court, therefore, had no opportunity
to rule, appellant did not preserve those claims. Having thus failed to preserve error
by raising his challenges for the first time on appeal and not in the trial court, as
required by rule 33.1(a)(2), appellant has waived any claim of federal constitutional
error. See Smith, 721 S.W.2d at 855; Solis, 945 S.W.2d at 301.

B. Standard of Review

 Under the bifurcated standard of review that controls rulings on a motion to
suppress, we defer almost totally to the trial court's determination of historical facts,
and we review the court's application of the law de novo. See Dyar v. State, 125
S.W.3d 460, 462 (Tex. Crim. App. 2003); Brown v. State, 212 S.W.3d 851, 866 (Tex.
App.--Houston [1st Dist.] 2006, pet. denied). 

 The trial court is the trier of fact at a hearing on a motion to suppress and alone
determines the credibility of witnesses and the weight, if any, to accord their
testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); Brown, 212
S.W.3d at 866-67. Accordingly, the trial court may believe or disbelieve all or any
part of a witness's testimony, even if that testimony is not controverted. Ross, 32
S.W.3d at 855; Brown, 212 S.W.3d at 867; see also Ford v. State, 158 S.W.3d 488,
493 (Tex. Crim. App. 2005) (reaffirming rule). When, as here, the trial court files
no findings of fact, we view the evidence in a light most favorable to the trial court's
ruling and assume that the trial court made implicit fact findings supported by the
record, Ford, 158 S.W.3d at 493; we will uphold the ruling on any theory of law
supported by the evidence. Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App.
2005); Brown, 212 S.W.3d at 867. 

C. Arrest or Detention?

 Appellant supports his challenge to denial of his motion to suppress in part by
arguing that Officer Cooper arrested him without probable cause when he was placed
in the rear seat of the patrol car, despite the officer's contentions that he detained
appellant pending further investigation and that appellant was not arrested until after
Officer LaCourt discovered the felony conviction that rendered appellant's possession
of the shotgun a criminal offense. 

 Whether an investigative detention constitutes an arrest depends upon the facts
and circumstances surrounding the detention. Amores v. State, 816 S.W.2d 407, 412
(Tex. Crim. App. 1991); Goldberg v. State, 95 S.W.3d 345, 360 (Tex. App.--Houston
[1st Dist.] 2002, pet. ref'd) (holding that handcuffing defendant and placing him in
rear of patrol car did not convert detention into arrest). Neither an officer's subjective
belief that a suspect is detained or arrested, nor the suspect's subjective belief that he
is detained or arrested is determinative, except to the extent that these may be
manifested in the words or actions of law enforcement officials, an issue not raised
here. See Ford, 158 S.W.3d at 493; Dowthitt v. State, 931 S.W.2d 244, 254-55 (Tex.
Crim. App. 1996); McRae v. State, 152 S.W.3d 739, 748 (Tex. App.--Houston [1st
Dist.] 2004, pet. ref'd); Goldberg , 95 S.W.3d at 360. Instead, we apply an objective
standard that examines the reasonableness of the officer's actions, from the
perspective of a reasonable officer at the scene, rather than with the advantage of
hindsight. Ford, 158 S.W.3d at 492; Goldberg, 95 S.W.3d at 360. 

 On sighting appellant's vehicle within minutes of leaving the woman who
reported the alleged aggravated assaults, Officer Cooper drove to the gas station that
appellant had just entered. This was reasonable, given the description of the car that
Cooper had just received and the description of the alleged aggravated assaults. See
Goldberg, 95 S.W.3d at 360. As soon as he was close enough to see appellant in the
driver's seat, Cooper recognized him, having recognized him already by name,
residence, the woman's description, and the officer's own familiarity with both
appellant and the neighborhood. After pulling up behind appellant and activating the
flashers on his patrol car, Officer Cooper left his car and asked appellant to leave his. 
This, too, was reasonable given the criminal conduct reported and the specificity of
the woman's descriptions. See id. It is undisputed that Cooper did not draw his
weapon and that appellant left his car voluntarily. 

 On seeing the shotgun on the passenger side of the front seat, Officer Cooper's
first concern was the need for backup support to secure both the weapon and
appellant, in order to continue the investigation. Given these circumstances, in
addition to having seen, in plain view, precisely the type of weapon allegedly used
in the aggravated assaults the woman-informant described, it was reasonable for
Cooper to get to his patrol car, both to use his police radio to summon backup and
to detain appellant. See id. In contrast to the circumstances in Goldberg, in which
the suspect was handcuffed while he was detained, see id., it is undisputed that
appellant was not handcuffed, and nothing in the record suggests either use of force
by Cooper or resistance by appellant. Though he testified at the hearing on the
motion to suppress, appellant did not claim that he was told that he was under arrest,
and Officer Cooper testified that appellant was not arrested until after Officer
LaCourt used the computer on his patrol car to investigate appellant's criminal
history and discovered his felony conviction that occurred within the previous five
years.

 We thus conclude, from the totality of circumstances and in keeping with the
standard of review, that appellant was not under arrest, but, rather detained 
temporarily in Officer Cooper's patrol car, based on Cooper's reasonable concerns
that he obtain backup so that the shotgun that had just been discovered could be
secured and the investigation continue. 

D. Reasonable Suspicion for Investigative Stop?

 Having decided that Officer Cooper's encounter resulted in an investigatory
detention and not an arrest, we decide next whether Cooper stopped and detained
appellant based on reasonable suspicion. We review questions of reasonable
suspicion de novo, as questions of law. See Guzman v. State, 955 S.W.2d 85, 87-88
(Tex. Crim. App. 1997); Hawes v. State, 125 S.W.3d 535, 538 (Tex. App.--Houston
[1st Dist.] 2002, no pet.); State v. Garcia, 25 S.W.3d 908, 911 (Tex. App.--Houston
[14th Dist.] 2000, no pet.). Reasonable suspicion exists if the officer has specific,
articulable facts that, when combined with rational inferences from those facts,
would lead the officer to conclude reasonably that a particular person actually is, has
been, or soon will be engaged in criminal activity. Ford, 158 S.W.3d at 493. This
is an objective standard determined by considering the totality of the circumstances. 
Id. 

 Settled law recognizes that a police officer may stop and briefly detain a
person suspected of criminal activity, provided the officer has sufficient reasonable
suspicion of criminal conduct to justify the investigative detention. See id. at 492;
Davis v. State, 947 S.W.2d 240, 242-44 (Tex. Crim. App. 1997) (discussing Terry
v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968) and Texas case law); Hawes, 125 S.W.3d
at 538; Goldberg, 95 S.W.3d at 360. Officer Cooper did not observe the conduct
that served as the basis of his investigation, but received it from the woman who
reported the criminal conduct to Cooper.

 Because the record does not reveal this woman's identity, we treat the
information she provided as an anonymous tip. See Mitchell v. State, 187 S.W.3d
113, 117 (Tex. App.--Waco 2006, pet. ref'd); Bilyeu v. State, 136 S.W.3d 691,
694-95 (Tex. App.--Texarkana 2004, no pet.); State v. Fudge, 42 S.W.3d 226, 230
(Tex. App.--Austin 2001, no pet.); Garcia, 25 S.W.3d at 912-13. Standing alone,
an anonymous tip will rarely establish the level of suspicion required to justify a
detention. Florida v. J.L., 529 U.S. 266, 270, 120 S. Ct. 1375, 1378 (2000);
Alabama v. White, 496 U.S. 325, 329, 110 S. Ct. 2412, 2415 (1990). This is
especially true when the reporter of the tip is not identifiable, as here and as we
explained in Hawes. Hawes, 125 S.W.3d at 540 (distinguishing Stewart v. State, 22
S.W.3d 646, 650 (Tex. App.--Austin 2000, pet. ref'd) and Davis v. State, 989
S.W.2d 859, 865 (Tex. App.--Austin 1999, pet. ref'd), in which police officers
received information relayed by telephone, which rendered it essentially
unidentifiable and unverifiable); see Mitchell, 187 S.W.3d at 117 (citing White, 496
U.S. at 329, 110 S. Ct. at 2415). 

 A suitably corroborated anonymous tip can, however, exhibit "'sufficient
indicia of reliability to provide reasonable suspicion to make the investigatory
stop.'" J.L., 529 U.S. at 270, 120 S. Ct. at 1378 (quoting White, 496 U.S. at 327, 110
S. Ct. at 2414); Mitchell, 187 S.W.3d at 117; Hawes, 125 S.W.3d at 538. As we
noted in Hawes, id. 538, in holding that the totality of circumstances justified
detention, several Texas courts of appeals have upheld investigative stops based
solely on unsolicited reports from private citizens. See id. (citing Fudge, 42 S.W.3d
at 232) (upholding detention of accused based on unsolicited personal report by cab
driver to officer about erratic driving); Garcia, 25 S.W.3d at 913-14 (holding that
reasonable suspicion existed after informant individual "flagged down" officer in
parking lot and personally reported incident, even though informant later left scene
without identifying himself); State v. Stolte, 991 S.W.2d 336, 342-43 (Tex.
App.--Fort Worth 1999, no pet.) (holding that traffic stop justified based on tip from
informant who witnessed erratic driving, called police on cellular phone, followed
vehicle, and waited at scene when stop was made); State v. Sailo, 910 S.W.2d 184,
189 (Tex. App.--Fort Worth 1995, pet. ref'd) (upholding stop based on report
personally given to officer even though informant drove away before being
identified)). 

 Several courts have also recognized, in addition, the heightened reliability of
a tip provided by an unidentified informant who places himself in a position to be
easily identified and held responsible for the information he provides. See Hawes,
125 S.W.3d at 538-59 (citing Fudge, 42 S.W.3d at 232 (noting that informant's
placing himself in position to be held accountable constituted "primary indicia of
reliability"); (quoting Garcia, 25 S.W.3d at 913 ("Unlike a person who makes an
anonymous telephone call, an individual presenting himself to the officer in person,
and doing so while driving a vehicle from which his identity might easily be traced,
puts himself in a position to be held accountable for his intervention," thus
increasing reliability of information informant provided); (citing and quoting Stolte,
991 S.W.2d at 341-42 (holding that person's placing himself in position "to be held
accountable for his intervention" renders tip more reliable)). A firsthand account
and detailed descriptions of wrongdoing also increase reliability. See Hawes, 125
S.W.3d at 539 (citing Illinois v. Gates, 462 U.S. 213, 234, 103 S. Ct. 2317, 2330
(1983); Sailo, 910 S.W.2d at 189; Stolte, 991 S.W.2d at 342.) 

 The circumstances of this case demonstrate "sufficient indicia of reliability"
to warrant Officer Cooper's reliance on the information provided to him when he
responded to the woman's service call. In this case, therefore, as in Hawes, Mitchell,
Fudge, Sailo, Stolte, and Garcia, the information was conveyed by a person who,
though not actually identified, was in a position to be identified. Cooper arrived at
a specific address in his patrol area, where the woman was waiting for him at the end
of a driveway to a house she led Cooper to believe was her residence. Though the
woman was not at the house when Cooper returned after appellant was arrested, her
identity could readily have been determined, especially by someone like Cooper who
was familiar with the neighborhood. The woman could, therefore, readily be held
accountable for the information she conveyed. See Hawes, 125 S.W.3d at 538-39. 
 In addition, the information the woman provided was extensively detailed. 
See id. at 539. She specified that the weapon was a shotgun, as opposed to simply
"a gun," and identified appellant by the name "Jay," his physical description, and
where he lived--details that were sufficiently specific for Officer Cooper to identify
appellant from the officer's undisputed familiarity with the neighborhood and
acquaintance with appellant since childhood. She also described appellant's car in
sufficient detail that Officer Cooper was able to identify it when he saw it shortly
thereafter. Though the woman did not specify that she had witnessed the conduct
she reported, she expressed fear of harm to members of her family, based on the
readily verifiable information that they had been involved in an altercation with
appellant. 

 Because of the heightened indicia of reliability in the information provided to
Officer Cooper by the woman-informant, we may properly require a lesser degree of 
corroboration by Cooper to warrant reasonable suspicion for an investigative stop
under totality-of-circumstances analysis. See J.L., 529 U.S. at 270, 120 S. Ct. at
1378; Mitchell, 187 S.W.3d at 117; Hawes, 125 S.W.3d at 538. Officer Cooper
nonetheless provided ample corroboration. On spotting the car the woman
described, Cooper pursued the car and positively identified appellant, both from the
woman's description and Cooper's own knowledge, as soon as he was within
viewing distance of appellant's car. Having thus linked appellant to the woman's
report of aggravated assault, Cooper pulled up behind appellant and turned on the
patrol-car flashing lights so that he could question appellant about the information
he had received. On approaching appellant and asking him to step out of the car,
Cooper observed a shotgun--the exact weapon specified by the woman--in plain
view beside appellant on the passenger side of the front seat and resting on the
floorboard and seat. 

 Based on the totality of circumstances presented, and in keeping with the
standard of review, we hold that Officer Cooper made a legal investigative stop
based on the information received from the woman with whom Cooper had spoken
and his own corroboration of that information. Though not identified, the woman
was not a truly anonymous informer, but a person who placed herself in a position
in which she could be held accountable for her report. See Hawes, 125 S.W.3d at
539 (citing Fudge, 42 S.W.3d at 232). These indicia of reliability, when combined
with the officer's own identification of appellant and his corroboration of the report,
through the weapon observed in plain view in appellant's car, and viewed in the
totality of the circumstances, provided sufficient reasonable suspicion to justify not
only the investigative stop of appellant, but also his resulting investigatory detention
of appellant.

E. "Plain View" Seizure

 If an officer violates a person's privacy rights by his illegal conduct, article
38.23 of the Code of Criminal Procedure renders the fruits of his search or seizure
inadmissible in a criminal proceeding. Miles v. State, No. PD 1047-06, slip op. at
6, 2007 WL 3010420, *5 (Tex. Crim. App. Oct. 17, 2007) (not yet reported)
(construing Tex. Code Crim. Proc. Ann. art. 38.23). Settled law recognizes,
however, that seized items that are in plain view violate no privacy concerns. See
id. n.46; see also Texas v. Brown, 460 U.S. 730, 737-39, 103 S. Ct. 1535, 1541
(1983) (stating that "plain view" doctrine is not true "exception" to warrant
requirement because "'seizure of property in plain view involves no invasion of
privacy and is presumptively reasonable'"); Horton v. California, 496 U.S. 128, 133,
110 S. Ct. 2301, 2306 (1990) (stating that neither observing nor seizing item already
in plain view involves invasion of privacy under Fourth Amendment). 

 For a seizure of an item in plain view to be lawful, the officer's intrusion must
be proper and it must be immediately apparent that the object to be seized is
evidence associated with criminal activity. Walter v. State, 28 S.W.3d 538, 541
(Tex. Crim. App. 2000). As addressed above, Officer Cooper had reasonable
suspicion to stop and detain appellant based on information he had received, as
corroborated from his own observations and knowledge. Accordingly, Cooper was
properly present outside appellant's car, where he first encountered appellant and
where he observed the shotgun in plain view in that car. Appellant does not dispute
this element of the plain-view test. 

 Instead, appellant contends that Cooper improperly seized the shotgun because
it was not immediately apparent that the shotgun was evidence of a crime. We
disagree. In the process of investigating a report of aggravated assault involving a
shotgun, Officer Cooper had located the suspect, appellant, whom Cooper had
already identified based on the description, name, and address provided to him. 
Having located appellant, Cooper saw, in plain view in appellant's car, the weapon
allegedly used in the aggravated assaults according to the information that Cooper
had received just minutes earlier. (2) 

 We hold that because Officer Cooper was properly present outside appellant's
car, pursuant to the legitimate investigation of appellant, and because it was
immediately apparent to Cooper that the shotgun was evidence associated with
criminal activity reported by the woman with whom Cooper spoke, the seizure of the
shotgun by Officer LaCourt was likewise proper under the plain view doctrine. See
Walter, 28 S.W.3d at 541.

 We overrule appellant's first point of error. 

Article 38.23 Charge Error


 In his third point of error, appellant contends that he was entitled to an article
38.23 jury instruction (3) and that the trial court erred by denying appellant's requested
instruction because there was conflicting evidence concerning whether the shotgun
was in plain view. The exclusionary rule of article 38.23 proscribes admissibility of
evidence against an accused in a criminal trial if the evidence was "obtained by an
officer or other person in violation of the laws or constitutions of Texas or the United
States." Tex. Code Crim. Proc. Ann. art.38.23(a) (Vernon 2005). When the
evidence at trial raises a fact issue concerning the legality of a search or arrest that
produced evidence used at trial, article 38.23(a) imposes a mandatory duty on the
trial court to instruct the jury "that if it believes, or has a reasonable doubt, that the
evidence was obtained by such a violation, then it shall disregard any such
evidence." See id.; Pickens v. State, 165 S.W.3d 675, 680(Tex. Crim. App. 2005);
McRae, 152 S.W.3d at 747-48. The trial court's duty does not arise, however, unless
"there is a factual dispute about how the evidence was obtained." Pickens, 165
S.W.3d at 680 (quoting Garza v. State, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004)). 
The dispute must concern whether the evidence was illegally obtained. See id. 
Though a fact issue about whether evidence was legally obtained may derive "from
any source," and though the evidence may be "strong, weak, contradicted,
unimpeached, or unbelievable," the legality of the search or arrest is a question of
law, not fact, when essential facts concerning the search or arrest are not in dispute. 
McRae, 152 S.W.3d at 748 (citing Garza, 126 S.W.3d at 86). 

 In requesting the article 38.23 instruction of the trial court, as here, appellant
contends that a fact issue arose concerning the legality of the seizure of the shotgun
because Officer Cooper testified that he did not remember any coverings on the
shotgun, but Officer LaCourt testified that the shotgun was partially covered. As the
trial court stated, however, before denying the requested instruction, "[B]oth officers
said unequivocally [that] they could see the shotgun in plain view." We agree with
the trial court: whether partially covered or not, both officers saw a shotgun. Here,
as in McRae, there was no dispute concerning the "essential fact" that a shotgun was
in plain view in appellant's car. See id., 152 S.W.3d at 748 (citing Garza, 126
S.W.3d at 86). Because the inconsistency on which appellant relies did not defeat
the undisputed testimony that a shotgun was in plain view, the evidence here did not
raise a "factual dispute about how the evidence was obtained," there was no article
38.23 issue for the jury to resolve concerning the legality of seizure of the shotgun. 
See Pickens, 165 S.W.3d at 680 (quoting Garza, 126 S.W.3d at 86). Therefore, the
trial court properly determined, as a matter of law, McRae, 152 S.W.3d at 748 (citing
Garza, 126 S.W.3d at 85), that the shotgun was seized, because it was in plain view
during an investigatory stop based on reasonable suspicion, as addressed above. We overrule appellant's third point of error.


Ineffective Assistance of Counsel


 In his second point of error, appellant contends that his trial counsel was
ineffective because he did not move to suppress appellant's "statement" that the
shotgun belonged to him. 

A. Point of Error Clarified

 Appellant's point on appeal implies a written statement by appellant that his
trial counsel might properly have moved to suppress by pretrial motion. The record,
however, shows only a reference to a statement by appellant, and that it occurred at
trial, during the State's case-in-chief examination of Officer Cooper, when the
following exchange occurred, after Cooper stated that he did not recall that anything
covered the shotgun, which "was right there in the open":

 PROSECUTOR: Did you speak with the defendant at all?

 COOPER: Yes.

 PROSECUTOR: What did you ask him?

 COOPER: When we made it back to the patrol vehicle I asked him
about--I questioned him about the shotgun. He said it
was his shotgun. He was en route to Louisiana.


 PROSECUTOR: Pass the witness, Your Honor.


Appellant's real complaint, therefore, is that his counsel was ineffective because he
did not object, at trial, when Cooper testified that appellant claimed ownership of the
shotgun. 

B. Standard of Review

 To prevail on his claim of ineffective assistance of counsel, appellant must
show that his counsel's performance was deficient, and that there is a "reasonable
probability"--one sufficient to undermine confidence in the result--that the outcome
would have been different but for his counsel's deficient performance. Ex parte
Chandler, 182 S.W.3d 350, 353 (Tex. Crim. App. 2005) (citing Strickland v.
Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984)). The purpose of the
constitutional requirement of effective counsel is to ensure a fair trial. Id. (citing
Strickland, 466 U.S. at 686, 104 S. Ct. at 2064). The "benchmark" for evaluating a
claim of claim of ineffectiveness, therefore, is whether counsel's conduct "so
undermined the proper functioning of the adversarial process" that one cannot rely
on the trial "as having produced a just result." Id. (citing Strickland, 466 U.S. at 686,
104 S. Ct. at 2064). In that relatively rare instance only may a criminal defendant
obtain a new trial on the grounds that his attorney provided constitutionally deficient
assistance. Id. at 354 (emphasis added). The constitutional right to counsel ensures
the right to reasonably effective counsel, not "errorless counsel whose competency
or accuracy of representation is . . . judged by hindsight." Mercado v. State, 615
S.W.2d 225, 228 (Tex. Crim. App. 1981) (cited in Rylander v. State, 101 S.W.3d
107, 110 (Tex. Crim. App. 2003)). 

 To meet his burden to show that his counsel was constitutionally deficient,
appellant must establish, by a preponderance of the evidence, that his trial counsel
was not acting as "a reasonably competent attorney," and that his advice was not
"within the range of competence demanded of attorneys in criminal cases." See id.
(quoting Strickland, 466 U.S. at 687, 104 S. Ct. at 2064). Appellant must also show
that counsel's constitutionally deficient performance prejudiced his defense, by
demonstrating "a reasonable probability that, but for counsel's unprofessional errors,
the result of the proceeding would have been different." See id. (citing Strickland,
466 U.S. at 669, 104 S. Ct. at 2055-56). 

 Under this two-pronged analytical framework, appellant must also overcome
the "strong presumption that counsel's conduct fell within the wide range of
reasonable professional assistance." See id. In evaluating counsel's representation
under a Strickland analysis, our review is "highly deferential" because we presume
that counsel's actions "fell within the wide range of reasonable and professional
assistance." Id. (quoting Bone v. State, 77 S.W.3d 828 (Tex. Crim. App. 2002)). 
Under normal circumstances, the record on direct appeal will not be sufficient to
demonstrate that counsel's representation was so deficient and so lacking in tactical
or strategic decision-making as to overcome the presumption that counsel's conduct
was reasonable and professional. Id. A Strickland claim must, therefore, be "firmly
founded" in a record that "affirmatively demonstrate[s]" the meritorious nature of
the claim. Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). When
the record on direct appeal is sufficient to prove that counsel's performance was
deficient, therefore, an appellate court "should obviously address the claim . . . ." 
Robinson v. State, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000).
 But, when counsel's reasons for failing to do what the defendant contends
should have been done do not appear in the record, as, for example, when trial
counsel has not been afforded an opportunity to explain his actions, we should not
find deficient performance unless the challenged conduct was "so outrageous that
no competent attorney would have engaged in it." Goodspeed, 187 S.W.3d at 392.
Unless claims of ineffective assistance are clearly demonstrated of record, id.,
therefore, we normally will not speculate to find trial counsel ineffective when the
record is silent on his reasoning or strategy. See Henderson v. State, 29 S.W.3d 616,
624 (Tex. App.--Houston [1st Dist.] 2000, pet. ref'd); Gamble v. State, 916 S.W.2d
92, 93 (Tex. App.--Houston [1st Dist .] 1996, no pet.). 

C. Discussion

 The record of this case lacks any explanation by trial counsel concerning why
he did not object when Officer Cooper testified that appellant told Cooper that the
shotgun belonged to him. Indeed, there was no opportunity for trial counsel to
explain his action, because this case proceeded directly to appeal without a motion
for new trial. Because the record contains no explanation by counsel, we decline to
conclude that he performed deficiently by not objecting to Cooper's testimony. To
conclude that counsel was ineffective under the record presented would require
impermissible speculation concerning his reasoning or strategy. See Henderson, 29
S.W.3d at 624; Gamble, 916 S.W.2d at 93.

 We overrule appellant's second point of error.

 Conclusion


 We affirm the judgment of the trial court.




 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Alcala and Bland.


Do not publish. Tex. R. App. P. 47.2(b).
1. Brandishing or exhibiting a weapon during an assault, the conduct reported by the
woman, is punishable as aggravated assault under the Penal Code. See Tex. Pen.
Code Ann. §§ 22.01(a)(2)-.02(a)(1)(2) (Vernon Supp. 2007).
2. Appellant emphasizes isolated testimony by Officer Cooper in which he agreed that
the shotgun was not an "illegal weapon." Taking Officer Cooper's testimony in
context, the only reasonable interpretation of the testimony is his recognizing that a
person who had not been convicted of a felony within the past five years could legally
possess such a weapon.  The officer's testimony clarifies that the weapon he observed
was not a weapon that is always illegal to possess, such as a weapon that has
a prohibited length, either in the barrel or overall.  See Tex. Pen. Code Ann. §§ 46.02
(defining offense of illegally carrying weapons), 46.01(10) (defining "short-barrel
firearm" as "rifle with a barrel length of less than 18 inches or any weapon made from
a shotgun or rifle if, as altered, it has on overall length of less than 26 inches.")
(Vernon Supp. 2007). 
3. Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005).