In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00109-CR


______________________________




FRITZ EARL HICKS, JR., Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 40th Judicial District Court


Ellis County, Texas


Trial Court No. 31371-CR




 



Before Morriss, C.J., Carter and Cornelius,* JJ.


Opinion by Justice Cornelius



________________________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment


O P I N I O N



 Fritz Earl Hicks, Jr., appeals his conviction for possession of cocaine with intent to deliver. 
He was convicted by a jury in the 40th Judicial District Court of Ellis County. (1) The jury made an
affirmative finding that Hicks used a deadly weapon in the commission of the offense and set Hicks'
punishment at fifteen years' confinement.

 Hicks raises three issues in five points of error: (1) the trial court erred in overruling Hicks'
motion to suppress evidence obtained as the result of a traffic stop; (2) the evidence is legally and
factually insufficient to show that Hicks committed the offense; and (3) the evidence is legally and
factually insufficient to support the jury's affirmative finding that Hicks used a deadly weapon in the
commission of the offense. We overrule all these contentions and affirm the judgment.

 We first address Hicks' contention that the trial court erred in overruling his motion to
suppress.

 We review a trial court's ruling on a motion to suppress for an abuse of discretion. State v.
Ross, 32 S.W.3d 853, 857 (Tex. Crim. App. 2000). At a hearing on a motion to suppress, the trial
court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. 
Carmouche v. State, 10 S.W.3d 323 (Tex. Crim. App. 2000). In reviewing the trial court's ruling on
a motion to suppress, we give almost total deference to the trial court's finding of historical facts that
are supported by the record, while reviewing de novo the trial court's application of the law to the
facts. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); Bilyeu v. State, 136 S.W.3d 691
(Tex. App.--Texarkana 2004, no pet.).

 At the suppression hearing, Officer Chase Huckabee of the Waxahachie Police Department
testified that, at about midnight on September 4, 2006, he saw a green Chevrolet Cavalier automobile
stopped in the middle of the intersection of Farley and Russo Streets. Huckabee observed the vehicle
for three to five seconds before he executed a traffic stop and detention of the vehicle for violating
Section 545.302(a)(3) of the Texas Transportation Code (stopping, standing, or parking a vehicle
in an intersection). Only one person, Hicks, was in the vehicle. When Huckabee approached the
vehicle to speak to Hicks, he detected a strong odor of burnt marihuana coming from the vehicle. 
Hicks told Huckabee that he did not have a driver's license and that his name was James Hill, which
later proved to be a false identification. When Huckabee asked Hicks to step out of the vehicle, he
noticed the odor of burnt marihuana coming from Hicks' clothes. When the officer began to pat
down the outside of Hicks' clothing, he heard what sounded like the rustling of a cellophane wrapper
and felt something in Hicks' right front pocket. Thinking that what he felt might be marihuana,
Huckabee reached inside Hicks' right front pocket and found two cellophane wrappers. One
contained eight and one-half white pills and the other contained three multicolored pills. Huckabee
called for a backup officer who identified the white pills as Xanax and the multicolored pills as
Ecstasy. Huckabee arrested Hicks for possession of a controlled substance. He conducted a search
incident to arrest and found crack cocaine, marihuana, and a digital scale under the right floorboard
mat in the back seat of the car. He also found a loaded .40 caliber handgun underneath the back seat
cushion. The vehicle was not registered to Hicks. Evidence later showed it belonged to Hicks'
girlfriend. Huckabee did not find any burnt marihuana in the car or on Hicks' person.

 It is a violation of the Texas Transportation Code for an operator to stop, stand, or park a
vehicle in an intersection. Tex. Transp. Code Ann. § 545.302(a)(3) (Vernon Supp. 2007). Any
peace officer may arrest, without a warrant, a person found committing a violation of Section
545.302(a)(3). See Tex. Transp. Code Ann. § 543.001 (Vernon 1999). Additionally, any peace
officer may arrest, without a warrant, any person who commits an offense in view of the officer. 
Tex. Code Crim. Proc. Ann. art. 14.01(b) (Vernon 2005). Moreover, a peace officer may stop and
briefly detain a person for investigative purposes if the officer has reasonable suspicion, based on
articulable facts, that the person detained is, has been, or soon will be engaged in criminal activity. 
Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); Garcia v. State, 827 S.W.2d 937, 944
(Tex. Crim. App. 1992).

 The facts recited earlier show that, when Officer Huckabee personally observed Hicks'
vehicle stopped and standing in the middle of the intersection, Huckabee was authorized to detain
Hicks and investigate the traffic violation. When he detected the strong odor of burnt marihuana,
he was authorized to detain Hicks further, and when he discovered the controlled substances on
Hicks' person, he had probable cause to place Hicks under arrest. The subsequent search was
authorized as a search incident to arrest, and the evidence found in that search was properly admitted
in evidence.

 Hicks argues that his detention was not legal because Huckabee testified only that he
"believed" he saw Hicks drive the car. Huckabee actually testified that he saw Hicks drive the car,
but driving the car is not an element of the offense Huckabee observed. The offense was stopping
in an intersection. Huckabee testified positively that he saw the vehicle stopped and standing in the
middle of the intersection. A positive statement that one saw a vehicle stopped and standing in the
middle of an intersection is not a mere opinion that a violation was in progress, which must be
supported by articulable facts raising a reasonable suspicion. It is a positive, unequivocal statement
of fact that a violation of the law was occurring. See Ford v. State, 158 S.W.3d 488 (Tex. Crim.
App. 2005) (relied on by Hicks). In Ford v. State, the officer testified that a motorist was following
a vehicle at a distance "[he] believed was insufficient." Id. at 492. The court held that the State
failed to elicit any testimony showing what facts would allow the officer to objectively determine
that Ford was following too closely. In our case, the officer testified objectively that Hicks was
stopped in the middle of the intersection.

 Hicks also argues that stopping or standing in an intersection for the brief time of three to five
seconds does not constitute "stopping, standing, or parking" in an intersection as prohibited by
Section 545.302(a)(3) of the Texas Transportation Code. We disagree. The statute defining the
offense does not prescribe a minimum time the vehicle must be stopped for the act to constitute an
offense. Moreover, there is no evidence that the vehicle Hicks was driving was stopped in the
intersection for only three to five seconds. Huckabee said he watched the vehicle stopped in the
middle of the intersection for three to five seconds, but he initially saw the vehicle when he first
approached the intersection. There is no evidence showing how long the vehicle was stopped in the
intersection before Huckabee arrived at the point where he could see it. Additionally, proof that an
offense was actually committed is not necessary to justify the investigative detention as long as
Huckabee reasonably believed that a violation was in progress. Drago v. State, 553 S.W.2d 375
(Tex. Crim. App. 1977); Plummer v. Edgar, 845 S.W.2d 452, 454 (Tex. App.--Texarkana 1993, no
pet.).

 We find there is both legally and factually sufficient evidence to support the trial court's
overruling Hicks' motion to suppress and that the trial court did not abuse its discretion in doing so.

 Hicks also challenges the sufficiency of the evidence to support his conviction for possession
of cocaine with intent to deliver.

 In reviewing the legal sufficiency of the evidence, we view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. King v. State, 29 S.W.3d 556, 562
(Tex. Crim. App. 2002). In reviewing the factual sufficiency of the evidence, we view all the
evidence in a neutral light. The evidence is factually insufficient when, although it is legally
sufficient, it is so weak that the verdict appears to be clearly wrong or manifestly unjust, or the
verdict is against the great weight and preponderance of the evidence. Watson v. State, 204 S.W.3d
404, 414-15, 417 (Tex. Crim. App. 2006); Castillo v. State, 221 S.W.3d 689, 693 (Tex. Crim. App.
2007).

 We find there is legally and factually sufficient evidence to sustain the conviction. Hicks was
found in the car where the controlled substances were discovered. There is testimony showing
sufficient links connecting Hicks to the contraband to show he knew of its presence and exercised
control over it, e.g.: the amount of contraband present was greater than the typical quantity
possessed for a user's personal use; a digital scale with cocaine and marihuana residue on it was
hidden in the car and the scale was the type commonly used in weighing and packaging narcotics for
delivery; Hicks was arrested in a high crime, high drug area; a loaded firearm was hidden in the car
close to the drugs and scale; and an experienced narcotics officer testified that, in his opinion, the
amount of drugs found, along with the digital scale and loaded firearm indicated that Hicks intended
to deliver the drugs. There was no contradictory evidence. This evidence is legally and factually
sufficient to authorize the jury to find that Hicks possessed the contraband with the intent to deliver
it.

 We also find legally and factually sufficient evidence to support the jury's affirmative finding
that Hicks used a deadly weapon in the commission of the offense.

 The officers found a loaded .40 caliber handgun under the back seat cushion of the vehicle
Hicks was using. The handgun was concealed in close proximity to the drugs, the scale, and Hicks
himself. In these circumstances, the jury could reasonably believe and find that the handgun
protected and facilitated Hicks' care, custody, and management of the contraband, and thus
constituted his use of the handgun in the commission of the offense. See Patterson v. State, 769
S.W.2d 938, 942 (Tex. Crim. App. 1989); see also Gale v. State, 998 S.W.2d 221, 225 (Tex. Crim.
App. 1999); Charles v. State, 915 S.W.2d 238, 241 (Tex. App.--Beaumont 1995, pet. ref'd).

 For all the reasons stated, we affirm the judgment of the trial court.



 William J. Cornelius

 Justice*


*Chief Justice, Retired, Sitting by Assignment



Date Submitted: March 6, 2008

Date Decided: April 29, 2008


Publish
1. This case has been transferred to this Court as part of the Texas Supreme Court's docket
equalization program.



e="Medium Grid 2 Accent 5"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00077-CR

                                                ______________________________

 

 

                           SCOTT PATRICK MACQUARRIE,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                            On Appeal from the County
Court at Law

                                                             Fannin County, Texas

                                                            Trial
Court No. 44271

 

                                                                   
                               

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                      MEMORANDUM OPINION

 

            Scott Patrick MacQuarrie, charged
with driving while intoxicated (DWI), requested a suppression hearing.  MacQuarrie alleged that the officer who had
initially pulled him over for speeding did not properly use the radar device
which showed that he was exceeding the speed limit.  Absent a showing of the proper use of the
radar device to gauge his speed as being excessive, MacQuarrie maintains, there
was no probable cause to have stopped and detained him.  After a hearing, the trial court refused to
suppress the evidence obtained after the traffic stop, prompting MacQuarrie to
enter a plea of guilty.  After being
sentenced to a penalty of six months in county jail with a $750.00 fine,
suspended upon his placement on community supervision for eighteen months,
MacQuarrie has appealed his conviction.  MacQuarries
sole point on appeal is that the trial court erred in refusing to suppress the
evidence gained after the traffic stop.  We
affirm the trial courts judgment. 

I.          Fact
Summary 

            Officer George Robinson was driving
at approximately fifty miles per hour on State Highway 121 in Fannin County
when he spotted MacQuarrie approaching him from the other direction of travel
in the northbound lane.  Robinson
employed a Bee brand radar that was calibrated before shift to determine
MacQuarries speed.  Robinson, who had
attended a radar certification class, explained, When I see the vehicle, I
will let it get to a certain distance from me before I turn the radar unit on.
 To obtain an accurate reading with such
a Bee radar unit, it is Robinsons practice to allow approximately a
twenty-five to thirty-yard distance between the speeding vehicle and his patrol
unit before using the radar unit to gauge the speed of other automobiles.  After obtaining a reading of MacQuarries
speed from the radar at that distance, Robinson stopped him for speeding, for
77 miles in a 65-mile-an-hour zone.  

            Upon his approach to MacQuarrie,
Robinson could smell an odor of alcoholic beverage emitting on or about
[MacQuarries] person, and could tell that his eyes were bloodshot.  MacQuarrie admitted that he had been drinking
with friends.  After this admission,
Robinson contacted Trooper Ricardo Landeros, who conducted field-sobriety tests
and arrested MacQuarrie for DWI.  

            The basis for MacQuarries motion to
suppress rested on the claim that Robinson did not have reasonable suspicion to
stop his automobile. 

II.        Standard
of Review 

            We review a trial courts decision
on a motion to suppress evidence by applying a bifurcated standard of
review.  Graves v. State, 307 S.W.3d 483, 489 (Tex. App.Texarkana 2010,
pet. refd); Rogers v. State, 291
S.W.3d 148, 151 (Tex. App.Texarkana 2009, pet. refd).  While we defer to the trial court on its
determination of historical facts and credibility, we review its application of
the law and determination on questions not turning on credibility de novo.  Carmouche v. State, 10 S.W.3d 323, 332
(Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997); Villarreal v. State, 935
S.W.2d 134, 138 (Tex. Crim. App. 1996); Graves,
307 S.W.3d at 489.  We also afford
deference to a trial courts application of law to fact questions, also known
as mixed questions of law and fact, if the resolution of those questions
turns on an evaluation of credibility and demeanor.  Guzman,
955 S.W.2d at 89.  Since all the evidence
is viewed in the light most favorable to the trial courts ruling, we are
obligated to uphold the denial of MacQuarries motion to suppress if it was
supported by the record and was correct under any theory of law applicable to
the case.  Carmouche, 10 S.W.3d at 32728; State
v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). 

III.       The
Radar Evidence

            An officer conducts a lawful stop
when he has reasonable suspicion to believe that an individual is violating the
law.  Ford
v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  Reasonable suspicion exists if the officer has
specific, articulable facts that when combined with rational inferences from
those facts, would lead him to reasonably conclude that a particular person
actually is, has been, or soon will be engaged in criminal activity.  Id.;
Garcia v. State, 43 S.W.3d 527, 530
(Tex. Crim. App. 2001).[1]  This is an objective standard that disregards
any subjective intent of the officer making the stop and looks solely to
whether an objective basis for the stop exists. 
Ford, 158 S.W.3d at 492.  If an officer has a reasonable basis for
suspecting that a person has committed a traffic offense, the officer may
legally initiate a traffic stop.  Zervos v. State, 15 S.W.3d 146, 151
(Tex. App.Texarkana 2000, pet. refd); Graves,
307 S.W.3d at 489; see Tex. Code Crim. Proc. Ann. art.
14.01(b) (West 2005).  

            Robinsons reasonable suspicion to
conduct the traffic stop was based on the radar devices reading of the speed
of MacQuarries vehicle, a speed detected to be excessive.  However, MacQuarrie argues that the State
failed to establish a sufficient predicate for admitting the results of the
radar speed calculation device into evidence under Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).  In Maysonet
v. State, we recited the Kelly
factors, which require the proponent of evidence based on a scientific theory
to show that (1) the underlying scientific theory is valid; (2) the technique
applying the theory is valid; and (3) the technique was properly applied on the
occasion in question.  Maysonet v. State, 91 S.W.3d 365, 369
(Tex. App.Texarkana 2002, pet. refd) (citing Kelly, 824 S.W.2d at 573). 
Because the scientific validity of radar is well settled in both the
relevant scientific community and in Texas jurisprudence, we stated in Maysonet that we view the underlying
scientific principles of radar as indisputable and valid as a matter of law.  Id. at
371 (citing Masquelette v. State, 579
S.W.2d 478, 481 (Tex. Crim. App. [Panel Op. 1979) ([T]he officers testimony that
he had been both trained to operate the radar set and to test it for accuracy
is a sufficient predicate to support admission of radar evidence.  Thus, . . . the State is not required to call
expert witnesses to establish the accuracy of the radar.) (citations
omitted)).  However, we cautioned that
the State must still establish that officers applied a valid technique and
that it was correctly applied on the particular occasion in question.  Id. 

            Here, MacQuarrie complains that
Robinsons technique in employing the radar device (maintaining that the
distance between the two automobiles at the time the testing took place was too
short to render an accurate reading), demonstrated that Robinson did not employ
the proper technique in utilizing the device. 
In support of this argument, MacQuarrie cites to a hypothetical given to
Landeros:

            Q.        .
. . . I want you to assume a hypothetical. 
Okay?

 

            A.        Okay.


 

            Q.        Youve
got a vehicle coming towards you travelling 77 miles per hour.  Okay?

 

            A.        Okay.


 

            Q.        Youre
going 65 miles per hour. 

 

            A.        Okay.


 

            Q.        Assume
a distance between the two vehicles of 25 yards.

 

            . . . . 

 

            Q.        Assume
a distance between the two vehicles of 30 yards. 

 

            A.        Before
I even think, its going to be on me. 

 

            . . . . 

 

            A.        .
. . . But I dont personally check a car when its that close.

 

            Q.        Why?

 

            A.        Why?  Because when I see a car coming, it is -- its
from a half mile to -- a half a mile in front of me when I check its
speed.  I dont check the speed right
there right on top of me. 

 

            Q.        So,
would it be appropriate to check the speed of a vehicle for radar purposes when
its right there on top of you?

 

            A.        No.


 

            Q.        Why?

 

            A.        Because
I need distance. 

 

This
hypothetical contradicted Robinsons statement that he was travelling at a speed
of fifty miles per hour and that he waited for the vehicle to reach within
twenty-five to thirty yards of his unit prior to checking its speed with the
radar device at that distance.[2]  Additionally, Landeros practice with regard
to the use of a radar speed checking device was based upon the radar in his
trooper patrol car, not shown to be the same type employed by Robinson.  Robinson testified that with respect to radar
systems in the Fannin County Sheriffs Office patrol cars, [d]ifferent
vehicles had different radars. 
Robinsons statement that he allows 25 to 30 yards between his patrol
car and a suspected speeding vehicle to obtain an accurate speed was specific to
the Bee unit. 

            MacQuarrie next relies on an
affidavit from Brandi Holcomb, a Bonham High School math teacher, who was
requested to calculate the amount of time that would elapse between two
vehicles meeting each other at varying distances and varying speeds.  The results of her calculations suggested it
would take less than half a second for MacQuarries vehicle to meet Robinsons
vehicle, assuming the distance between the two vehicles was anywhere from
twenty-five to thirty yards at the commencement of the speed test.  Based upon Holcombs calculations, MacQuarrie
argues that it would have been impossible for Robinson to perceive MacQuarrie
and deploy the radar device in under half a second.  However, this calculation ignores Robinsons
testimony that he recorded MacQuarries speed at a time when Robinson was
twenty-five to thirty yards away from MacQuarries vehicle.  That it took less than half a second for the
two vehicles to then meet is of little consequence. 

            During the hearing, MacQuarries
counsel asked Robinson, [Y]ou observed no bad driving on his part?, to which
Robinson replied, The only thing was the speeding.  Robinson testified that he was certified to
operate the radar device, that the device had been properly calibrated, and
that he employed the device properly by waiting for MacQuarries vehicle to
reach within a certain distance to ensure accuracy with the Bee radar.  We reiterated in Maysonet that [t]he determination of the presence of reasonable
suspicion is a factual one and is made by considering the totality of the
circumstances at the time of the stop.  Maysonet, 91 S.W.3d at 372.  The trial judge is the exclusive trier of
fact at a suppression hearing.  State v. Ross, 32 S.W.3d 853, 855 (Tex.
Crim. App. 2000).  The trial court could
have found that the radar reading obtained by Robinson provided him with a
factual basis to determine and/or confirm his suspicion that MacQuarrie was
speeding.  Therefore, as in Maysonet, we determine here that the
trial court did not abuse its discretion by denying MacQuarries motion to
suppress based on lack of reasonable suspicion. 
Maysonet, 91 S.W.3d at 372; see Mills v. State, 99 S.W.3d 200, 20203
(Tex. App.Fort Worth 2002, pet. refd). 
MacQuarries point of error is overruled. 

IV.       Conclusion


            We affirm the trial courts
judgment. 

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date
Submitted:          September 14, 2011

Date
Decided:             September 15, 2011

 

Do Not
Publish











[1]One
might observe that Robinson may have entertained a reasonable suspicion that
MacQuarrie was speeding; otherwise, he would likely not have had a reason to
clock the speed of MacQuarries car by use of the radar apparatus.  However, that was not developed at the
suppression hearing.





[2]Instead,
the trial court could have found that this hypothetical situation incorrectly assumed
that the officer first spotted MacQuarries vehicle when it was twenty-five to
thirty yards away, and could have disregarded Landeros answer to the
hypothetical.