**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-15-00456-CR**
**NO. 09-15-00457-CR**
**NO. 09-15-00458-CR**

_____

**TREMAYNE ALEXANDER JOHNSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause No. 14-02-02063-CR – Count 1, Count 2 & Count 3**

**MEMORANDUM OPINION**

After the trial court denied his motion to suppress evidence, appellant Tremayne Alexander Johnson (Johnson or Appellant) pleaded guilty to one count of possession of a controlled substance (namely cocaine) in the amount of four grams or more but less than 200 grams with intent to manufacture/deliver, one count of manufacture or possession of a controlled substance (namely

1

methamphetamine) in an amount of four grams or more but less than 400 grams with intent to deliver, and one count of unlawful possession of a firearm by a felon. *See* Tex. Health & Safety Code Ann. §§ 481.112 (West 2010); 481.113 (West Supp. 2016);[1] Tex. Penal Code Ann. § 46.04 (West 2011). Johnson also pleaded "true" to the enhancement paragraphs alleged for the count of unlawful possession of a firearm by a felon. The trial court found Johnson guilty on all three counts and, in accordance with the plea agreement, assessed punishment on each count at thirty years of confinement, with the sentences to run concurrently. On appeal, Johnson challenges the trial court's denial of Johnson's motion to suppress. We affirm the trial court's judgments.

Motion to Suppress and Evidence at Hearing

On or about September 25, 2014, Johnson filed a motion to suppress, which alleged, in relevant part, that all physical evidence seized and statements illegally obtained should be suppressed because

> [t]he stop and detention of Johnson and the automobile he was occupying was without probable cause or reasonable suspicion in violation of the 4th, 5th, 9th, and 14th Amendments of the United States Constitution and Article 1, §§ 9, 10 & 19 of the Texas Constitution[.]

The trial court held a hearing on the motion on October 31, 2014.

---

[1] We cite to the current version of the statute because the subsequent amendment does not affect the issue on appeal.

Cindy Forbes testified at the suppression hearing that her role as the Communication Supervisor for the Conroe Police Department included the care and custody of audio recordings and supervising the officers within her office. She testified that the recording of the dispatch call in this case was kept in the regular course of business, was made by someone with knowledge of the events in this case, and was made at or near the time of the events in this case. The recording was played at the hearing. The recording indicates that the initial call came in around 12:50 a.m., the caller can be heard saying, "Can I get someone out here?" and the call ended before dispatch could get any information. Dispatch called the number back multiple times, and on one attempt, the voicemail prompt for someone named "Chikita" answered. Dispatch made another attempt to call the number and a female answered and stated, "I got an emergency out here[,]" and dispatch advised her that an officer was on the way. Forbes agreed that on the first call one can "hear kind of a bunch of screaming and it's kind of inaudible[]" and that dispatch was able to obtain an address from where the call was placed.

Officer Gordon Westbrook, a patrol officer for the Conroe Police Department, also testified at the suppression hearing. Westbrook explained that on the night of February 20, 2014, he was dispatched to 912 Silverdale, regarding a disturbance. Westbrook testified that the area to which he was dispatched was a

3

very high crime area known for drugs and prostitution. According to Westbrook, when he arrived at the address, a woman later identified as Chikita Johnson was "waving and flagging [him] down." When Westbrook pulled into the driveway a black Nissan Versa was pulling out of the driveway. Chikita Johnson then began yelling at Officer Westbrook and pointing to the Nissan, "[t]hat's him, that's him. He's the one. . . causing the disturbance[.]" Westbrook then followed the Nissan and initiated a stop.

Westbrook approached the Nissan. A female was driving the Nissan and a male was in the front passenger seat. Westbrook asked the occupants of the vehicle "what's going on over there[?]" and the passenger in the vehicle, later identified as the Defendant, Johnson, answered that it was "nothing, just an argument." According to Westbrook, Johnson appeared sweaty, and because Johnson appeared to be sweating, Westbrook asked Johnson if the argument was verbal or if there was an altercation, to which Johnson replied that "no, I'm just hot." Officer Westbrook noticed Johnson's right hand "kind of tucked under his leg[]" and, because Westbrook did not know if Johnson had a weapon, Westbrook asked to see Johnson's hands. According to Westbrook, Johnson then "showed his hand, [in] which he held some packages of synthetic marijuana and cigarillos." Officer Westbrook asked Johnson to drop what was in his hand and "[w]henever he did a

4

cellophane bag also fell with it." Officer Westbrook asked Johnson what was in the bag and Johnson answered that it was "Serenity[,]" which Westbrook explained is a synthetic marijuana. Johnson handed Westbrook the cellophane bag and Westbrook testified that the contents smelled like "real marijuana."

Officer Westbrook testified that once Johnson was in handcuffs in the back seat of Westbrook's patrol car and he had read Johnson his *Miranda* rights, Westbrook went back to the vehicle, searched the vehicle, and found the other bags of synthetic marijuana, "several other cellophane type bags and some brightly colored pills inside[,]" and a pill bottle containing "crack cocaine, powder cocaine and some pills of ecstasy or MDMA." According to Westbrook, he found the pill bottle "in the center floorboard right in front of the passenger seat and it was the same location that [Johnson] had dropped the other bags of serenity and cigarillos." Westbrook also removed the female occupant from the car so he could do a more thorough search and handcuffed her. Video from Officer Westbrook's patrol car dash camera was played at the hearing. The video portrayed Westbrook's arrival at the dispatched address, as well as the traffic stop.

Officer Jeremy Moore testified that the call that dispatched him had also dispatched Officer Westbrook. Officer Moore explained that he went to the traffic stop and arrived after the Nissan had been stopped. According to Officer Moore,

5

Johnson had already been placed under arrest for the other drugs found in the car. Johnson told Officer Moore that a safe in the car was Johnson's, and Johnson had the key to the safe on his person. A narcotics dog alerted to the safe and Officer Moore opened the safe with the key. Officer Moore found scales and drug residue inside the safe.[2]

The trial court denied the motion to suppress. In denying the motion, the trial court explained its reasoning:

> The 911 calls, it wasn't just one. It was by my count seven calls going back and forth. Two made from the complaining witness and then the remainder made from the dispatch trying to get back in touch with the complaining witness. And when they couldn't, obviously officers were routed after the first call, because it did sound rather chaotic and honestly couldn't understand what they were saying. A lot of screaming noise going on. I think after that call dispatch saying officer in route. And based on that I believe he had a duty to investigate. He couldn't just not go there and try to find out what's going on. As soon as he pulls up a car is leaving the scene, the black Nissan Versa is leaving the scene, and he's got somebody telling him, that's him, he's in that car. I think you consider that an investigative stop, detaining Mr. Johnson at that point to try to figure out what is going on at that time. They detain the Defendant. While he is being detained he drops drugs in plain view. He drops a combination of drugs. He drops baggies, pill bottles, and this new package of serenity. Again, it's 1:00 a.m. in the morning. Didn't look like it was a very lit area. They have got a traffic stop, drugs found on the passenger in plain view. They get him out, cuff him, search him, make sure there is no weapons. And I think you're right, I think they could have gone into the safe at

---

[2] Although the officers that testified at the hearing did not testify specifically about the firearm, there was a discussion at the hearing by State's counsel and the trial court regarding a handgun found in the safe.

that point. But they got an alert from the drug dog. Key was on the Defendant, admits it's his safe. And while he did not give them consent, I make that finding clear, I think the fact that they had already found drugs on the Defendant combined with the dog's alert, the key on his person and him admitting that it was his safe I think they had the right to search that locked safe. So, based on those findings . . . I'm denying the Defense's Request to Suppress the evidence.

Issue on Appeal

On appeal, Johnson argues that the court abused its discretion by denying Johnson's motion to suppress and admitting evidence obtained from an investigatory detention conducted without reasonable suspicion. Specifically, Johnson asserts that Officer Westbrook did not have reasonable suspicion for his initial detention of Johnson, which renders any evidence obtained therefrom inadmissible, and that such evidence is prohibited by the Fourth Amendment and article 1, section 9 of the Texas Constitution.

Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447-48 (Tex. Crim. App. 2010). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of the law to the facts de novo. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and

the weight to be given their testimony, and a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *Valtierra*, 310 S.W.3d at 447; *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007) (quoting *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999)); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

In reviewing a trial court's ruling, the appellate court does not engage in its own factual review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts, "especially if those are based on an assessment of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review purely legal questions de novo as well as mixed questions of law and fact that do not turn on credibility and demeanor. *State v. Woodward*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011); *Crain*, 315 S.W.3d at 48. We also review de novo "whether the totality of [the] circumstances is sufficient to support an officer's reasonable suspicion of criminal activity." *Crain*, 315 S.W.3d at 48-49.

In the absence of any findings of fact, either because none were requested or none were spontaneously made by the trial court, an appellate court must presume that the trial court implicitly resolved all issues of historical fact and witness credibility in the light most favorable to its ultimate ruling. *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011) (citing *Ross*, 32 S.W.3d at 856); *see also Aguirre v. State*, 402 S.W.3d 664, 667 (Tex. Crim. App. 2013) (Cochran, J., concurring) ("in the absence of specific findings, an appellate court's hands are tied, giving it little choice but to 'view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record'") (quoting *Ross*, 32 S.W.3d at 855). We afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *Arguellez v. State*, 409 S.W.3d 657, 662-63 (Tex. Crim. App. 2013); *Ross*, 32 S.W.3d at 855.

## The Detention

On appeal, Johnson specifically argues that Officer Westbrook did not have reasonable suspicion to initially stop Johnson, and therefore, the admission of the evidence obtained as a result of the stop is prohibited by the Fourth Amendment to the United States Constitution and article 1, section 9 of the Texas Constitution. "An officer may make a warrantless traffic stop if the 'reasonable suspicion' standard is satisfied." *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015). "[A]n officer is generally justified in briefly detaining an individual on less than probable cause for the purposes of investigating possibly-criminal behavior where the officer can 'point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). This is an objective standard that disregards the subjective intent of law enforcement and requires only some minimal level of justification for the stop. *Terry*, 392 U.S. at 21-22; *Wade v. State*, 422 S.W.3d 661,

668 (Tex. Crim. App. 2013); *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010). However, law enforcement must have more than an inarticulable hunch or mere good-faith suspicion that a crime was in progress. *Crain*, 315 S.W.3d at 52 (quoting *Williams v. State*, 621 S.W.2d 609, 612 (Tex. Crim. App. 1981)). In deciding whether law enforcement had a reasonable suspicion, we examine the facts that were available to law enforcement at the time of the investigative detention. *Terry*, 392 U.S. at 21-22; *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997). This determination is made by considering the totality of the circumstances, giving the factfinder almost total deference to the determination of historical facts, and reviewing de novo the trial court's application of law to facts not turning on credibility. *Ford*, 158 S.W.3d at 492-93.

In determining whether the totality of the circumstances, viewed objectively, provide a justifiable basis for the stop or detention, we consider the cumulative information known to the cooperating officers at the time of the stop rather than whether those officers are "personally aware of every fact that objectively supports a reasonable suspicion to detain[.]" *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). Information provided to police from a citizen-informant who identifies herself and may be held to account for the accuracy and veracity of her report may be regarded as reliable. *Id.* at 914-15. The Court of Criminal

Appeals has held that in such a scenario, the only question is whether the information that the known citizen-informant provides, viewed through the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal activity is afoot. *Id.* at 915. When a tip is made by phone and the caller's identity is unknown, and if the tip is corroborated, the police officer may reasonably conclude the tip is reliable and therefore detention is justified. *See Alabama v. White*, 496 U.S. 325, 326-27, 332 (1990). This requires that the officer must corroborate details that indicate criminal activity. *See id*. at 330-31; *see also Stewart v. State*, 22 S.W.3d 646, 648 (Tex. App.—Austin 2000, pet. ref'd) ("An officer's prior knowledge and experience, and his corroboration of the details of the tip, may be considered in giving the anonymous tip the weight it deserves.").

In the matter before us, although the caller in the 911 call initially did not identify herself, once Officer Westbrook arrived at the location to which he was dispatched, he had a face-to-face interaction with a woman who told him that the male who was in the black Nissan Versa had caused a disturbance, thereby corroborating the 911 disturbance call. *See Bilyeu v. State*, 136 S.W.3d 691, 696 (Tex. App.—Texarkana 2004, no pet.) ("The officer must corroborate facts that would lead him or her to reasonably suspect that 'some activity out of the ordinary

12

is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime.'" (internal citation omitted)).

Based upon the totality of the circumstances as established in the record before us, the information was sufficient to provide the officer with reasonable suspicion to stop and detain Johnson. The collective information known to Officer Westbrook from dispatch indicated that a disturbance was reported by a 911 call and traced by dispatch to a specific address, there was a voicemail message on the telephone that was the source of the 911 call stating the voicemail belonged to someone named "Chikita," and the Officer arrived at the scene and had a face-to-face interaction with a complainant who was at the address where he was dispatched, and who was identified as the caller. The combination of information was sufficient to give Officer Westbrook reasonable suspicion to stop and detain Johnson in order to investigate further.

We conclude on the record before us, that there were "specific articulable facts," when combined with rational inferences from those facts, from which the trial court could have reasonably concluded that Officer Westbrook's initial detention of Johnson was objectively reasonable. The trial court did not err in

denying the motion to suppress. We overrule Johnson's issue on appeal and affirm the trial court's judgments.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on December 19, 2016
Opinion Delivered January 18, 2017
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

14